O
JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CAROLE E. FITZGERALD,<br><br>    Plaintiff,<br><br>  vs.<br><br>LIBERTY MUTUAL INSURANCE CO., et al.,<br><br>    Defendants. | Case No.: SACV 13-0262 DOC(JPRx)<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT [16]** |

Before the Court is the Motion for Summary Judgment or in the Alternative, Partial Summary Judgment (Dkt. 16) filed by Defendants Liberty Mutual Insurance Co., et al. ("Liberty Mutual"). After considering the moving and opposing papers, and the oral arguments of counsel, the Court GRANTS the motion.

**I.    Background**

    a.  Plaintiff's Position

1   Plaintiff Carole E. Fitzgerald ("Fitzgerald") suffered severe injury after an uninsured
2   driver hit her vehicle on November 20, 2011.¹  As a result of the accident, Fitzgerald was
3   disabled for at least seven weeks and incurred medical expenses of $20,000.  Compl. ¶ 5;
4   Fitzgerald Decl. ¶ 3.  Fitzgerald had a car insurance policy issued by Defendant Liberty Mutual
5   Insurance Company ("Liberty Mutual") that she claims provided uninsured motorist benefits of
6   $50,000 and medical benefits of $5,000.  Compl. ¶ 3; Fitzgerald Decl. ¶ 2.
7   After her accident, Fitzgerald filed a claim with Liberty Mutual under her policy.  Compl.
8   ¶ 7.  Fitzgerald signed a settlement with Liberty Mutual in November, 2011, that she thought
9   released only her uninsured motor claim, but no medical claim.  Fitzgerald Decl. ¶ 4.  In May
10  2011, Fitzgerald received a check for $46,470.51.  Fitzgerald Decl. ¶ 5.  Fitzgerald had medical
11  expenses in excess of $5,000.  Fitzgerald Decl. ¶ 6.  In her declaration, Fitzgerald states the
12  following complaint:

> 7. I felt that Liberty unnecessarily delayed settlement of my uninsured motor claim.  Then, they refused to comply with the terms of the settlement, to pay me $50,000.  They also refused to reimburse me for my medical expenses; and instead required me to pay more than $3,521.00, for my own medical expenses.  They did not pay Dr. Hurria, and likewise would not pay my acupuncture bills.  I also had other medical expenses that they would not pay.

Fitzgerald Decl. ¶ 7.

Fitzgerald brought the instant lawsuit on October 22, 2012.  Compl. at 1.  The Complaint alleges a single count of a bad faith breach of the implied covenant of good faith and fair dealing.  Compl. ¶¶ 15-19.  Fitzgerald alleged that Liberty Mutual breached this covenant with

---

¹ Plaintiff's Opposition to the Motion for Summary Judgment and Plaintiff's Complaint state this date as March 23, 2011.  *See* Opp'n at 4; Compl. ¶ 5.  But Plaintiff's Declaration, Dkt. 19-2, states the accident happened on November 20, 2010.  Defendants also list the date of the accident in their Statement of Undisputed Facts, Dkt. 16-2, and the Plaintiff stated this is "Not Disputed" in its Response (Dkt. 19-1).  The discrepancy is unexplained, but the Court adopts the most recent undisputed date, which is also the more common reference in the provided documents, including the settlement agreement.

-2-

respect to her policy by denying her claims, delaying payment, and failing to investigate the accident and injuries. Compl. ¶ 17.

### b. Defendants' Position

Liberty Mutual issued Fitzgerald a LibertyGuard Auto Policy, Policy No. A02-268-557078-40 0 9. *See* Ward Decl. Ex. A.[2] The policy provides $50,000 in uninsured motorist coverage. *See* Ward Dec. Ex. A at 12. It also provides for $5,000 in excess medical coverage pursuant to Endorsement No. AS 2193 12 06. *See* Ward Decl. Ex. A at 38. The excess medical coverage includes the following limits:

> Excess Basis: This coverage applies to all insureds on an excess basis only, except as provided below. This means that we will not pay for necessary and appropriate medical expenses or funeral services expenses of an insured covered under this part, when the insured is also covered under the provisions of any primary medical plan.
>
> Primary Basis: This coverage will apply on a primary basis to necessary and appropriate medical expenses, which are not covered under the applicable primary medical plans. . . .

Ward Decl. Ex. A at 39.

After a series of letters discussing Fitzgerald's claims, the parties signed a release of all claims associated with the accident. Fitzgerald's counsel signed the release on November 1, 2011, and Fitzgerald signed on November 2, 2011. Lennon Decl. Ex. 17 at 147. The release provided that, for $50,000, Fitzgerald released Liberty Mutual (including agents, successors, etc.) from:

> any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever which the undersigned now have or which may hereafter accrue on account of that certain incident occurring

---

[2] Fitzgerald makes several evidentiary objections to the declarations provided by Defendants, including lack of foundation. The Court finds these arguments unpersuasive, finds that the declarations lay sufficient foundation, and denies any requested exclusion or further discovery.

> on or about November 20, 2010, in Orange, California, including but not limited to any and all causes of action which are alleged in the action entitled "Carole Fitzgerald, Claimant v. Liberty Mutual Insurance Company, Respondant" in The Matter of the Uninsured Motorist Arbitration Proceedings in connection with the processing of the above claim and the defense of the above-referenced legal proceeding.

Lennon Decl. Ex. 17 at 146. The release included an express waiver that "all rights under Section 1542 of the Civil Code of California and any similar law of any state or territory of the United States are hereby expressly waived." *Id*.

The release also includes a provision on liens:

> The undersigned agrees to be solely responsible for all liens, actual or prospective, asserted by any person or entity not a party to this agreement. Said responsibility on the part of the undersigned shall extend to all liens arising from any medical treatment rendered on behalf of the undersigned, any disability payments made to the undersigned, and any and all subrogation claims arising from the subject incident.

*Id*. at 147.

After the parties signed the release, Liberty Mutual issued a payment check for $50,000.00, listing Fitzgerald, Medicare, and Healthcare Recoveries (Fitzgerald's medical insurer) as payees. Lennon Decl. Ex. 18. Fitzgerald objected, arguing that Medicare and Healthcare Recoveries were not parties to the settlement, and so should not be listed as payees. *See* Lennon Decl. Ex. 19. Liberty Mutual responded that it was obligated to honor liens on the payment, that Healthcare Recoveries had notified Liberty Mutual of a lien of unspecified amount, and that Fitzgerald's age at the time of the accident (sixty-seven years old) suggested Medicare's possible involvement. *See* Lennon Decl. ¶ 20.

Fitzgerald again objected and requested that Liberty Mutual issue the settlement check to Fitzgerald alone. *See* Lennon Decl. Ex. 22. Liberty Mutual responded that it would do so, but would need confirmation of the exact lien amount from Healthcare Recoveries and a letter from

Medicare confirming that they sought no lien. *See* Lennon Decl. Ex. 22. Liberty Mutual sent that letter on November 28, 2011.

The parties continued to exchange letters between one another and with Healthcare Recoveries and Medicare regarding the settlement. *See* Lennon Decl. Exs. 23-34. On May 4, 2012, Fitzgerald's counsel received notice that Medicare paid no claims from the accident. *See* Lennon Decl. Ex. 32. On May 15, 2012, Fitzgerald's counsel received confirmation from Healthcare Recoveries of a lien amount of $3,521.49. Lennon Decl. Ex. 33. Liberty Mutual sent Fitzgerald's counsel a settlement check for $46,478.51 on May 16, 2012. *See* Lennon Decl. Ex. 34. On August 6, 2012, Fitzgerald's counsel sent Liberty Mutual a letter notifying Liberty Mutual of Fitzgerald's intent to file suit. *See* Lennon Decl. Ex. 35.

## II. Legal Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248-49. A "material fact" is one which "might affect the outcome of the suit under the governing law . . . ." *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions

in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *Id.* The court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

### III. Discussion

Defendants argue that Fitzgerald waived any claims of bad faith associated with her November 2010 accident because she signed a release. Defendants further argue that Fitzgerald was not entitled to any recovery for bad faith because: 1) Fitzgerald was not entitled to any excess medical payment recovery because she had medical coverage; 2) there was no breach of the contract from which bad faith could result; 3) the Genuine Dispute Doctrine bars any bad faith argument. Fitzgerald appears to respond that the bad faith allegations may lie based on the delay in processing the insurance claim, that the bad faith allegations may lie based on the delay in sending the settlement check, that the bad faith allegations may lie based on the "mishandling" of the uninsured motor claim, and that the release is invalid.

#### a. Waiver of Claims

Liberty Mutual argues that any and all bad faith claims are waived because Fitzgerald released Liberty Mutual when she signed the settlement release. Fitzgerald responds that the release is not valid or "itself" constitutes bad faith because Defendants are trying to "sneak" the medical pay claim into the uninsured motor release, and because the Defendants' failure to pay the full $50,000 constitutes "lack of adequate consideration." Opp'n at 6. The Court finds Defendants' position persuasive.

First, the release is comprehensive and includes "any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses an compensation whatsoever which the undersigned now have or which may hereafter accrue on account of that certain

incident occurring on or about November 20, 2010, in Orange, California." Ward Decl. Ex. 17 at 146. This clearly encompasses any claims for medical care under the policy. Fitzgerald and her counsel both state in declarations that they did not intend to release any bad faith claims or medical claims, but this parol evidence of intent is not admissible to alter the terms of an unambiguous, executed contract. *See Hervey v. Mercury Cas. Co.*, 185 Cal. App. 4th 954, 961 (2010) ("Although parol evidence may be admissible to determine whether the terms of a contract are ambiguous, it is not admissible if it contradicts a clear and explicit policy provision." (citations omitted)). Therefore, any allegations that further claims for medical care were not covered by the release are unavailing. Because the release is comprehensive and valid, no conduct regarding Liberty Mutual's pre-settlement handling of the claims can constitute bad faith – these claims are clearly waived under the agreement.

      b.  Failure to Allege any Claims for Breach of the Settlement

Second, Fitzgerald brought no causes of action in her complaint challenging the settlement itself. Fitzgerald's complaint alleges bad faith only as to the performance of the covenants claimed in the policy itself. See Compl. ¶¶ 15-18. Any claims based on a breach of the policy are precluded by the settlement. Fitzgerald pleaded no breach of the settlement itself, and so cannot now argue any material issue of fact as to claims that do not exist. *See Richter v. Mut. of Omaha Ins. Co.*, No. 05-498, 2007 WL 6723708, at *6 n.5 (C.D. Cal. Feb. 1, 2007) ("[T]he alleged HIPAA violations cannot form the basis of [Plainitffs'] unfair business practices claim because Plaintiffs never raised HIPAA in the Complaint."); *Rastelli Bros., Inc. v. Netherlands Ins. Co.*, 68 F. Supp. 2d 440, 447 (D.N.J. 1999) ("[P]laintiff cannot seek summary judgment on an issue which was never raised in the Complaint.").

Furthermore, even if the Court were to imagine that some breach of the settlement was alleged, the result would remain unchanged. Fitzgerald's "consideration" argument is puzzling, as it seems to claim the release is void for a lack of consideration because Fitzgerald was not *paid* the promised $50,000. There was adequate consideration to form a binding contract because Defendants agreed to pay $50,000.00 for the release of Fitzgerald's claims. Any claim that the $50,000 was not paid would have to encompass a breach of contract claim. Fitzgerald

has alleged no breach of the settlement agreement, and so any arguments premised on this theory are not cognizable.

To the extent that Fitzgerald appears to argue that the delay in issuing the final check constituted a breach or bad faith, the Court similarly cannot divine how this constitutes a breach on this record. Fitzgerald rejected the initial check, issued promptly, because it included possible lienholders as payees. Fitzgerald then requested a check payable only to Fitzgerald, which required assurances from Medicare and Healthcare Recoveries regarding their respective claims. *See* 42 U.S.C. § 1395y(b)(2)(B); 42 C.F.R. 411.24(g)-(i), 411.26. The delay in receiving notice from Medicare explains the delay in Liberty Mutual issuing the check, delay that cannot be attributed to Defendants. Fitzgerald produces no evidence suggesting that Healthcare Recoveries was not entitled to its lien, nor that there was a faster way for Defendants to verify those claims, nor that Liberty Mutual was entitled to release the funds solely to Fitzgerald without honoring the lien. Plaintiff cites no law supporting the proposition that the naming of possible lienholders, including Medicare, on the settlement check might constitute breach. The Court's limited research suggests the reverse. *See Mercado v. Allstate Ins. Co.*, 340 F.3d 824, 827 (9th Cir. 2003); *Wall v. Leavitt*, No. 05-2553, 2008 WL 4737164 (E.D. Cal. Oct. 29, 2008); *Bank of Am. Nat. Trust & Sav. Ass'n v. Allstate Ins. Co.*, 29 F. Supp. 2d 1129, 1141 (C.D. Cal. 1998); *Levin v. Gulf Ins. Grp.*, 69 Cal. App. 4th 1282, 1286 (1999).

The Court finds it very dubious that a plaintiff who causes the delay in question by refusing payments properly issued to include potential lienholders can later claim that delay as the basis for bad faith or breach. Regardless, to the extent that such a claim theoretically could lie, it was not alleged in the complaint and so is not before the Court.

**IV.  Disposition**

In light of the foregoing, the Court GRANTS the Motion.

DATED: February 4, 2014

_____
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE